IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TODD JOHNSON | § | CIVIL ACTION NO. _____ |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| AFRI-CAT, CC, d/b/a ALPHAPOWERCATS | § | |
| COM, JEFF NIEMANN, YACHT SEARCH, | § | |
| INC., and WALT STRZALKOWSKI | § | |
| | § | |
| *Defendants.* | § | JURY TRIAL REQUESTED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Todd Johnson ("Johnson") files his original complaint and would respectfully show the Court as follows:

**I.
INTRODUCTION**

1.      Afri-Cat, its principal Jeff Niemann, and their American associates, Yacht World and Walt Strzalkowski defrauded Johnson by selling him defective boat. Niemann, Strzalkowski, and their companies induced Johnson into paying over $1 million for a luxury sport catamaran—the Freedom II—a boat afflicted by numerous systemic problems affecting nearly all of the vessel's systems. And despite Johnson's attempts to facilitate the necessary repairs to the Freedom II, neither Afri-Cat, nor Niemann, nor Yacht Search, nor Strzalkowski has fixed the ship into the condition promised to Johnson when he bought the ship. As a result, Johnson has been forced to file this lawsuit.

## II.
## PARTIES

2. Defendant Afri-Cat, CC d/b/a AlphaPowerCats.Com ("Afri-Cat") is a South African corporation doing business in Texas without a registered agent. It may be served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

3. Defendant Jeff Niemann ("Niemann") is a South African citizen. He may be served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters or wherever he may be found.

4. Defendant Yacht Search, Inc. is a Florida corporation doing business in Texas. It may be served with process by serving its registered agent, Walter A. Strzalkowski, at 10461 Denoeu Rd., Boynton Beach, Florida, 33472.

5. Defendant Walt Stzalkowski is a Florida resident doing business in Texas. He may be served with process at 10461 Denoeu Rd., Boynton Beach, Florida, 33472 or wherever he may be found.

## III.
## JURISDICTION

6. Federal jurisdiction for this matter exists under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and involves citizens of different states and/or foreign states.

**PLAINTIFFS ORIGINAL COMPLAINT**                                                P a g e | 2

## IV.
## FACTUAL BACKGROUND

7. On March 21, 2014, Afri-Cat sold Johnson an AFRI-CAT 455 SPORTCAT catamaran, christened "Freedom II," for approximately $1,008,798.11. Both Afri-Cat and Johnson memorialized this sale in a document titled "General Conditions of Sale" ("Contract").

8. Walt Strzalkowski ("Strzalkowski") and his company, Yacht Search, brokered Johnson's purchase of the Freedom II from Afri-Cat. While Strzalkowski owns and operates Yacht Search as a business venture independent from Afri-Cat, he is also listed on Afri-Cat's website as its salesperson for the America's.

9. Johnson purchased the Freedom II due to numerous representations made by Afri-Cat, Niemann, Yacht Search, and Strzalkowski concerning the quality of Afri-Cat's boats. These representations included statements that the Freedom II would provide an "exceptional combination of quality, luxury, and performance" and that the Freedom II would provide a "luxurious, economical, and spacious" vessel designed for cruising and sportfishing.

10. Almost immediately upon delivery, the Freedom II displayed a laundry list of defects, as detailed below.

11. ***Afri-Cat failed to equip the Freedom II with a properly functioning Dynamic Positioning System ("DPS")***. DPS is a computer-controlled system that automatically maintains a vessel's position and heading via use of the Volve IPS System and propellers. The Freedom II's DPS system would not hold position or heading. This remained true even after the correct software was loaded into the Freedom II's computers in the United States had the system had been recalibrated. Johnson had Volvo, the DPS's manufacturer, contacted for a diagnosis of the problem—Volvo indicated that the vessel's beam is too wide to support proper DPS functionality. Thus, Volvo concluded that the Freedom II's supporting beams impeded proper

DPS functionality, that the DPS system was functioning to the best of its ability considering Afri-Cat's build, and that no corrective action could be taken.

12. ***Afri-Cat improperly installed the Freedom II's motors causing numerous, substantial defects***. Volvo also evaluated the Freedom II's motors and discovered that the propellers only reached a maximum of 3420 rpm and failed to obtain the rated maximum of 3600 rpm. In evaluating the motors, Volvo also discovered that the Freedom II's prop pitch is too steep and that the engine's compartments experienced a lack of air flow.

13. ***Afri-Cat delivered the Freedom II with voluminous outstanding punch-list items which still have not been remedied***. Afri-Cat failed to deliver the Freedom II in a proper working condition. Instead, Afri-Cat delivered a vessel afflicted by a multiple of punch list items needing immediate repair. These items included:

- Repairs to the vessel's air conditioning unit;

- Repairs to a water leak in the ship's water system;

- Repairs to the navigation light systems;

- Repairs to the ship's A/C ducting system and accompanying grill work.

- Stability issues affecting the Freedom II's seaworthiness arising from hull modifications completed without accompanying weight adjustments as well as collaboration and consent from the Freedom II's designer;

- Numerous electrical and electronics issues due to improper fitting, improper installation, and use of improper materials; and

- Defects in and substandard materials used for the Freedom II's fuel storage and distribution systems that cause the ship's tanks to leak.

14. ***Afri-Cat improperly painted the Freedom II causing extensive, systematic defects requiring an entirely new coat be applied***. Several areas of the Freedom II exhibited low gloss levels and poor distinction of image due to overspray and/or dry spray. Afri-Cat did not

prime several areas of the boat (deck, hull side, cabin sides, cockpit, and overhangs) with a high build or finish primer, causing indentions or "valleys" in the topcoat. Moreover, Afri-Cat failed to apply the paint primer to a sufficient dry-film thickness, making substrate-level defects visible. Afri-Cat also applied different shades of white colored paint to various parts of the Freedom II. Finally, the Freedom II's outboard areas exhibited blistering in the paint's coat.

15.     Upon discovering this litany of defects, Johnson notified Afri-Cat, Yacht Search, Strzalkowski, and Niemann.  Johnson had several email communications with these parties regarding the numerous defects. He also invoked Paragraphs 2.1 and 2.2 of the Contract pursuant to a certified letter sent to Afri-Cat, Yacht Search, Strzalkowski, and Niemann on March 7, 2016. Importantly, this letter's reference to Paragraphs 2.1 and 2.2 triggered Afri-Cat's contractual obligations to timely and properly make all necessary repairs to the Freedom II:

> 2.1.    The builder shall at its expense and within a reasonable period of time, repair any defect in the product which arises within twelve (12 months) of the product being completed, provided that the purchaser notifies the builder of such defect by prepaid registered letter addressed to the builder, or by email, not more than thirty (30) days after such defect arises.
>
> 2.2.    Within the 12 (twelve) month warranty period, the builder agrees to repair or make good the defect itself or to employ any other conmpetent person, company or firm to do so on its behalf. However, the builder shall not be liable to pay the cost of transporting the product to its premises, or to the premises of some alternative repairer, or of returning same to the purchaser after such repairs have been affected.

To date, neither Afri-Cat, nor Yacht Search, nor Niemann, nor Strzalkowski have repaired the Freedom II.  Despite Niemann, Strzalkowski, and their companies' numerous and repeated representations concerning the exceptional quality, luxury, and performance of the Freedom II, the ship remains in utter disrepair. Johnson's requests to have Afri-Cat live up to its contractual obligations and to have Niemann, Stzalkowski, and Yacht Search make good on their promises

to deliver the "ultimate cruising and sportfishing" experience have fallen on deaf ears. As a result, Johnson has no other option but to file this lawsuit.

## V.
## CLAIMS AGAINST DEFENDANTS

### COUNT 1 – BREACH OF CONTRACT – AFRI-CAT ONLY

1. The foregoing is incorporated as if fully restated herein.

2. Johnson and Afri-Cat entered into the Contract—a valid and enforceable agreement—for Afri-Cat to manufacture the Freedom II and deliver it to Johnson in fully operational and proper condition.

3. Johnson performed all of his obligations under the Contract, including tendering all necessary payments to Afri-Cat.

4. Afri-Cat breached the Contract in numerous ways including without limitation failing to manufacture and deliver a fully operational vessel in proper working condition and to timely repair any and all defects in the ship's condition as required by Paragraphs 2.1 and 2.2 of the Contract.

5. Afri-Cat's breaches of the Contract damaged Johnson.

### COUNT 2 – MONEY HAD AND RECEIVED – AFRI-CAT ONLY

6. The foregoing is incorporated as if fully restated herein.

7. Johnson paid Afri-Cat $876,000.00. This amount was to be used for the purchase of the Freedom II in its promised and intended condition.

8. Afri-Cat received and holds the $876,000.00. This sum belongs to Johnson in equity and good conscience because Afri-Cat failed to manufacture and deliver the Freedom II in the condition it had promised to Johnson.

9. Therefore, Afri-Cat is liable to Johnson for repayment of the $876,000.00.

### COUNT 3 – NEGLIGENCE – AFRI-CAT ONLY

10. The foregoing is incorporated as if fully restated herein.

11. Afri-Cat owed Johnson a duty to properly manufacture the Freedom II in a workmanlike and non-defective manner.

12. Afri-Cat breached its duty to manufacture and deliver the Freedom II in a workmanlike and non-defective manner. Afri-Cat breached its common law duty to Johnson in several ways:

   a. Failing to manufacture the Freedom II with a properly functioning dynamic positioning system.

   b. Failing to properly install, calibrate, and maintain the Freedom II's motors and/or propeller's free from defects.

   c. Failing to properly remediate the numerous punch-list items submitted by Johnson.

   d. Failing to manufacture and paint the Freedom II in accordance with predominant industry practices and standards.

13. Afri-Cat's numerous breaches of its duty to Johnson directly and proximately caused him damage. Moreover, Afri-Cat's numerous breaches were substantial factors in causing Johnson's damages—and—but for these breaches of Afri-Cat's duty to manufacture and perform work on the Freedom II in a workmanlike and non-defective manner, Johnson would not have suffered damages.

14. Johnson has suffered damages as a result of Afri-Cat's numerous breaches. These damages include consequential damages to the structure of the Freedom II itself.

### COUNT 4 – UNJUST ENRICHMENT – AFRI-CAT ONLY

15. The foregoing is incorporated herein as if restated in full.

16. Johnson disbursed checks to Afri-Cat totaling $876,000.00. This amount was to be used for the purchase of the Freedom II.

17. Afri-Cat received and holds the $876,000.00. Johnson is entitled to restitution of this amount because Afri-Cat would be unjustly enriched if allowed to retain it.

18. Therefore, Afri-Cat is liable to Johnson for restitution of $876,000.00.

## COUNT 5 – FRAUD

19. The foregoing is incorporated herein as if restated in full.

20. Afri-Cat, Yacht Search, Strzalkowski, and Niemann made numerous false representations to Johnson regarding the Freedom II, including numerous representations regarding the vessel's functionality, quality, and workmanship.

21. Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false representations were material because they went to the heart of the Contract.

22. Afri-Cat, Yacht Search, Strzalkowski, and Niemann made these false representations to Johnson knowing them to be false and not intending to carry them out.

23. Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false representations directly and proximately injured Johnson, causing him direct and consequential damages.

## COUNT 6 – FRAUDULENT INDUCEMENT

24. The foregoing is incorporated herein as if restated in full.

25. Afri-Cat, Yacht Search, Strzalkowski, and Niemann made numerous false representations to Johnson regarding the Freedom II, including numerous representations regarding the vessel's functionality, quality, and workmanship ("Representations").

26. The Representations were false.

27. Afri-Cat, Yacht Search, Strzalkowski, and Niemann:

   i. knew the Representations were false when they were made to Johnson; or

   ii. recklessly made the Representations without knowledge of their truth.

28. Afri-Cat, Yacht Search, Strzalkowski, and Niemann made the Representations with the intent that Johnson act and/or rely upon them.

29. Johnson in fact relied upon Afri-Cat, Yacht Search, Strzalkowski, and Niemann's Representations.

30. Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false and misleading representations concerning the Freedom II's functionality, quality, and workmanship caused injury or damage to Johnson Afri-Cat, Yacht Search, Strzalkowski, and Niemann's course of action, conduct, acts, and omissions were a direct, producing and proximate cause of, and substantial factor in bringing about, Johnson's injuries and damages.  Without Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false and misleading representations, Johnson would not have suffered injury or damage. Moreover, a person of ordinary intelligence would have foreseen that the injury and damages alleged herein might result from Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false and misleading representations.

## COUNT 7 – FRAUD BY NONDISCLOSURE

31. The foregoing is incorporated herein as if restated in full.

32. Afri-Cat, Yacht Search, Strzalkowski, and Niemann knew that the representations made to Johnson regarding the Freedom II's functionality, quality, and workmanship were false and misleading.  At all relevant times, Afri-Cat, Yacht Search, Strzalkowski, and Niemann had a duty to disclose material facts concerning the Freedom II's functionality, quality, and

workmanship to Johnson. These facts included, without limitation: Afri-Cat's non-performance of its contractual obligations and its negligent work.

33. By their course of action, conduct, acts, and omissions alleged, Afri-Cat, Yacht Search, Strzalkowski, and Niemann concealed from or failed to disclose material facts within their knowledge to Johnson. Furthermore, Afri-Cat, Yacht Search, Strzalkowski, and Niemann were deliberately silent when they had a duty to speak and disclose these material facts to Johnson. Finally, Afri-Cat, Yacht Search, Strzalkowski, and Niemann intended to and did fail to disclose material facts to Johnson.

34. Afri-Cat, Yacht Search, Strzalkowski, and Niemann knew that Johnson did not know and did not have an equal opportunity to discover the material facts regarding the Freedom II's functionality, quality, and workmanship. Afri-Cat, Yacht Search, Strzalkowski, and Niemann also knew that Johnson would rely on their representations concerning the Freedom II's functionality, quality, and workmanship and made numerous deceptive and false representations to Johnson.

35. Johnson relied on Afri-Cat, Yacht Search, Strzalkowski, and Niemann's failure to disclose the material facts regarding the Freedom II's functionality, quality, and workmanship to Johnson to his detriment and he suffered injury as a result of acting without knowledge of the facts Afri-Cat, Yacht Search, Strzalkowski, and Niemann failed to disclose.

36. Had Afri-Cat, Yacht Search, Strzalkowski, and Niemann not committed fraud by nondisclosure, Johnson would never have purchased the Freedom II from Afri-Cat and accordingly not incurred damages.

37. Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false and misleading representations concerning the Freedom II caused injury and damage to Johnson. Afri-Cat,

Yacht Search, Strzalkowski, and Niemann's course of action, conduct, acts, and omissions were a direct, producing and proximate cause of, and substantial factor in bringing about Johnson's injuries and damages. Without Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false and misleading representations, Johnson would not have suffered injury or damage. Moreover, a person of ordinary intelligence would have foreseen that the injury and damages alleged herein might result from Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false and misleading representations.

### COUNT 8 – NEGLIGENT MISREPRESENTATION

38. The foregoing is incorporated herein as if restated in full.

39. Afri-Cat, Yacht Search, Strzalkowski, and Niemann provided Johnson with information in the course of their business and/or in a transaction in which they had a pecuniary interest.

40. Afri-Cat, Yacht Search, Strzalkowski, and Niemann supplied false information to Johnson in connection with their business and/or transactions.

41. Afri-Cat, Yacht Search, Strzalkowski, and Niemann did not exercise reasonable care or competence in obtaining or communicating the information to Johnson.

42. Johnson justifiably relied upon the numerous representations made by Afri-Cat, Yacht Search, Strzalkowski, and Niemann.

43. Johnson suffered damages proximately caused by its reliance upon Afri-Cat, Yacht Search, Strzalkowski, and Niemann's representations concerning the Freedom II.

### COUNT 9 – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

44. The foregoing is incorporated herein as if restated in full.

45. Afri-Cat, Yacht Search, Strzalkowski, and Niemann have made or employed false, misleading, or deceptive acts or practices in connection with promoting Afri-Cat's sale of the Freedom II to Johnson. These false, misleading, or deceptive acts or practices include without limitation:

   a. Making false, misleading, and inaccurate statements and deceptive acts and practices while supplying a defective product or service;

   b. Representing that the Freedom II had sponsorship, approval, characteristics, uses, benefits, and quantities that it did not have;

   c. Deceptively representing that the Freedom II was of a particular standard, quality, or grade which it was not;

   d. Making false, misleading, and deceptive statements of fact regarding the quality and performance of the Freedom II; and

   e. Failing to disclose information regarding the Freedom II that Afri-Cat, Yacht Search, Strzalkowski, and Niemann (i) knew at the time of the Contract's execution and (ii) which induced Johnson to sign the Contract—an agreement which Johnson would not have entered had Afri-Cat, Yacht Search, Strzalkowski, and Niemann properly disclosed this information.

46. Afri-Cat, Yacht Search, Strzalkowski, and Niemann's false, misleading, or deceptive acts and practices are a producing cause of Johnson's damages. Furthermore, Afri-Cat, Yacht Search, Strzalkowski, and Niemann committed these acts and practices intentionally and/or knowingly, with actual awareness at their falsity, deception and/or unfairness. Accordingly, Johnson is entitled to treble economic damages as additional damages under § 17.50 of the TEXAS BUSINESS AND COMMERCE CODE.

## COUNT 10 – CONSPIRACY

47. The foregoing is incorporated herein as if restated in full.

48. Afri-Cat, Yacht Search, Strzalkowski, and Niemann were members in a combination of two or more persons.

49. The object of the combination of Afri-Cat, Yacht Search, Strzalkowski, and Niemann was to accomplish an unlawful purpose or a lawful purpose via unlawful means.

50. Afri-Cat, Yacht Search, Strzalkowski, and Niemann hjad a meeting of the minds on this object or course of action.

51. At least one of Afri-Cat, Yacht Search, Strzalkowski, and Niemann committed an unlawful, overt act to further this object or course of action.

52. Johnson suffered injury as a proximate result of this wrongful act.

## COUNT 11 – ATTORNEY'S FEES

53. The foregoing is incorporated herein as if restated in full.

54. Johnson is entitled to recovery of his reasonable and necessary attorney's fees and costs pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 37.001 *et seq.*, TEXAS CIVIL PRACTICE AND REMEDIES CODE § 38.001 *et seq.*, and TEXAS BUSINESS AND COMMERCE CODE § 17.01 *et seq.*

## VI.
## PIERCING THE CORPORATE VEIL

55. The foregoing is incorporated herein as if restated in full.

56. Afri-Cat and Yach Search's corporate form should be disregarded because:

   a. Afri-Cat and Yacht Search were used as a sham to perpetrate a fraud;

   b. Afri-Cat and Yacht Search were organized and operated as a mere tool or business conduit for Niemann and Strzalkowski respectively;

   c. Afri-Cat and Yacht Search were and are being used to evade existing legal obligations;

   d. Afri-Cat and Yacht Search corporate form were used and are being used to circumvent a statute;

    e. Afri-Cat and Yacht Search corporate form were used and are being used to justify a wrong; and

    f. Afri-Cat and Yacht Search were inadequately capitalized with the effect of creating an injustice.

57.    Moreover, Niemann and Strzalkowski caused Afri-Cat and Yacht Search to be used for the purpose of perpetrating an actual fraud on Johnson. Furthermore, Afri-Cat, Yacht Search, Strzalkowski, and Niemann perpetrated an actual fraud on Johnson primarily for Niemann and Strzalkowski's direct personal benefit.

58.    As a result, Afri-Cat and Yacht Search's corporate form should be disregarded and Niemann and Strzalkowski held jointly and severally liable with Afri-Cat and Yacht Search for Johnson's damages

## VII.
## DAMAGES

59.    Johnson's damages include without limitation direct and consequential damages arising from Afri-Cat, Yacht Search, Strzalkowski, and Niemann's breaches. These damages include damage to the structure and functionality of the Freedom II.

60.    Afri-Cat, Yacht Search, Strzalkowski, and Niemann's wrongful conduct was voluntary, fraudulent, willful and malicious. Johnson is thus entitled to recover exemplary damages from Grant and Elfrey under TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.003 and Texas common law.

## VIII.
## JURY TRIAL

61.    Pursuant to Federal Rules of Civil Procedure 5 and 38, Johnson hereby demands a trial by jury.

## IX.
## CONDITIONS PRECEDENT

62. All conditions precedent, if any, to the claims or causes of action alleged herein have been met, waived or excused.

## X.
## PRAYER

Johnson respectfully requests that the Court enter judgment on the causes of action alleged in this Complaint, award it all damages, including but not limited to exemplary damages, pre- and post-judgment interest, attorney's fees, and costs incurred by Johnson, and grant it all other relief to which it may be entitled.

Respectfully submitted,

*/s/ Charles W. Lyman*
Charles W. Lyman
State Bar. No. 12724000
clyman@hdbdlaw.com
Varant Yegparian
State Bar No. 24070893
vyegparian@hdbdlaw.com

HARTLINE DACUS BARGER DRYER, LLP
1980 Post Oak Blvd., Ste. 1800
Houston, TX 77056
Tel. 713.759.1990
Fax 713.652.2419

**ATTORNEYS FOR PLAINTIFF TODD JOHNSON**